IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANTHONY A. DANIELS,                              *
                                                 *
                    Plaintiff,                    *
          vs.                                     *              Civil Action No. ADC-22-03057
                                                 *
BOARD OF EDUCATION                               *
FOR ANNE ARUNDEL                                 *
COUNTY PUBLIC SCHOOLS, et al.,                   *
                                                 *
                    Defendants.                   *
                                                 *

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

The Board of Education of Anne Arundel County ("Board of Education") and Chief

Communications Officer Robert Mosier ("Mr. Mosier," and collectively, "Defendants") move this

Court for summary judgment (the "Motion") (ECF No. 38) on Plaintiff Anthony A. Daniel's

("Plaintiff") Complaint. ECF No. 1. After considering the Motion and the responses thereto (ECF

Nos. 38, 49, 53), the Court finds that no hearing is necessary. Loc.R. 105.6 (D.Md. 2023). In

addition, having reviewed the pleadings of record and all competent and admissible evidence

submitted, the Court finds that there are no genuine issues of material fact as to any of the claims

asserted. Accordingly, the Court will GRANT Defendants' Motion for Summary Judgment.[1]

## FACTUAL BACKGROUND

Plaintiff is an African-American male, born in 1970. ECF No. 1 at ¶ 4. The Board of

Education is a governmental agency in the State of Maryland, operating the Anne Arundel County

Public School System. *Id.* at ¶ 5. Mr. Mosier is an employee of Anne Arundel Public Schools. *Id.*

---

[1] On November 29, 2022, this case was assigned to United States Magistrate Judge A. David
Copperthite for all proceedings in accordance with Standing Order 2019-07. ECF No. 4. All parties
voluntarily consented in accordance with 28 U.S.C. § 636(c). ECF No. 16.

at ¶ 6. On August 11, 2021, Plaintiff signed a contract for the position of Cross-Country Head

Coach at Meade High School ("Meade"). On November 18, 2021, Plaintiff also signed a contract

for the position of Indoor Track Head Coach at Meade.[2] ECF Nos. 1 at ¶ 7, 38-4. His positions

were limited to managing roughly 90 student athletes' participation in cross-country and track and

field at meets and practices. ECF No. 39-3 at 27–32. These meets and practices occurred

exclusively after school hours. *Id.* At the beginning of the 2021-2022 academic year, Plaintiff

received a copy of the Anne Arundel County Public Schools' "Athletics Handbook," which

included professional expectations for coaches. *See* ECF No. 38-6 at 8. At all relevant times,

Plaintiff was supervised in his role by Meade's athletic director, Jamie Cook ("Director Cook").

ECF No. 38-10 at 8:3–8.

On November 19, 2021, at 6:41 p.m., Plaintiff texted Director Cook the following concern

about unsupervised student athlete basketball players on campus: "Mannne these BBall players

are out here allll unsupervised like they have absolutely no sense at all.....Don't know where any

of the coaches are....Its very irresponsible on their parts...." ECF No. 38-3 at 1. Director Cook

responded by thanking Plaintiff for the information. *Id.* On December 1, 2021, Director Cook sent

the following message to all Meade coaches (ECF No. 49-3, emphasis in original):

**NEED YOUR HELP:**

Coaches,

At the beginning of the season, I asked for your help regarding our student athletes
and their presences and role in our school. Most recently there has been a large
number of our student athletes in the halls well beyond the start of their classes. In
the next few days, I would like for us all to impress upon them the importance of
school and that being on a team is a privilege and not a right. As the active leader
in the building, I will begin to impart on our student athletes that their lack o[f]
respect for adults in this building will not be tolerated. Moving forward I will speak

---

[2] Coaches were appointed on a year-by-year basis and were not categorized as teachers employed
through Anne Arundel County Public Schools.

to your athlete _**once and only once to move or go to class.**_ If I get any push back
or disrespect, I will personally be asking you to remove that athlete for that day and
please know that day could be game day. It's appalling to see how disrespectful our
students can be, but this can not and will not be tolerated by ANY athlete in our
programs.

On the evening of Tuesday, December 7, 2021, Plaintiff and a Meade student ("D."[3])

engaged in a series of verbal and physical altercations on Meade's campus. _See_ ECF Nos. 1 at ¶¶

13–27; 38-1 at 3–4. An initial interaction between Plaintiff and D. inside the school was captured

by closed-circuit video, as was the physical altercation that later broke out between them. _See_ ECF

No. 38 Exhibits B & C. A third video was taken by a student and captured the physical altercation

from a closer angle. _See_ ECF No. 38 Exhibit A. Only the student-filmed video, Exhibit A, contains

audio.

_Meade Closed-Circuit Video #1_

In the first closed-circuit video, Plaintiff can be seen walking down a hallway towards a

small group of students, including D., who are clustered around a hallway office reception counter.

ECF No. 38, Exhibit B at 00:00–00:18. Plaintiff first walks past the group of students but does not

engage with them. _Id._ at 00:32. When he reaches the end of the hallway, Plaintiff turns around and

walks back toward the students, and begins gesturing at them, seemingly urging them to leave. _Id._

at 00:46–00:51. The students gather their belongings while Plaintiff monitors their progress. _Id._ at

00:58–01:01. Plaintiff continues to gesture at the group. _Id._ at 01:24. The students slowly depart,

and the remaining four students, including D., begin to walk past down the hallway toward

Plaintiff. _Id._ at 02:25. Plaintiff allows two of the four students to pass him, but halts D.'s progress.

_Id._ at 02:39. While Plaintiff's face is obscured by his hoodie, he stands roughly two feet from D.,

---

[3] I will refer to the minor student whose interactions with Plaintiff are at issue as "D." This initial
is chosen at random and is intended to protect D.'s privacy.

and appears to be addressing D. directly. *Id.* at 02:43. D. speaks to Plaintiff, moving within a foot of him, and then drops his backpack to the ground. *Id.* at 02:47. Plaintiff removes his glasses while backing away from D., creating space between them. *Id.* at 02:51. The exchange continues, as another student steps between Plaintiff and D. and restrains D. *Id.* at 02:53. The other student steps away, but Plaintiff and D. continue speaking. *Id.* at 02:57. Plaintiff opens his arms, gesticulating widely, and D. lunges forward, coming within a foot of Plaintiff. *Id.* at 03:07. Plaintiff lunges back toward D., and D. retreats, raising his fists. *Id.* at 03:08. Plaintiff and D. continue arguing, several feet apart, and a third student attempts to intervene by placing a hand on D.'s shoulder. *Id.* at 03:21. Plaintiff raises both hands. *Id.* at 03:31. The Exhibit B footage ends with Plaintiff and D. still in the midst of arguing and gesturing at each other. *Id.* 04:05–04:12.

*Meade Closed-Circuit Video #2*

The second closed-circuit video shows footage outside of Meade, in front of a parking lot, and captures the physical altercation following D. and Plaintiff's hallway dispute. Initially, Plaintiff can be seen standing alone. ECF No. 38, Exhibit C at 00:05. A group, including D., exits the building and walks up to Plaintiff. *Id.* at 00:45. The group appear to be conversing until an individual in a grey sweater steps in front of D., blocking his path to Plaintiff. *Id.* at 01:17. Plaintiff side-steps backward while D. continues to be restrained. *Id.* at 01:22. The individual blocking D.'s path eventually steps out of the way, and D. moves in toward Plaintiff. *Id.* at 01:47. Plaintiff and D. enter into a fist fight, with both attempting to land punches. *Id.* at 01:51. While advancing on D., Plaintiff stumbles and falls to the ground. *Id.* at 02:00–02:03. After standing up, Plaintiff continues to move toward D., whose fists are still raised. *Id.* at 02:09. Plaintiff is then restrained by an adult individual who the parties have identified as "Coach Joe." *Id.* at 02:12; *see* ECF No. 38-1 at 4. Plaintiff pushes to be released from Coach Joe's restraint. The crowd that has gathered,

4

including D. disperses, and Coach Joe releases Plaintiff and walks away. *Id.* at 02:12–02:39. Plaintiff then begins to pace alone outside of Meade and appears to make a call on his cell phone. *Id.* at 03:17.

*Cell Phone Video Footage*

The final video was taken by a student on their cell phone and appears to capture the moment before Plaintiff and D. fought, and then the fight itself. *See* ECF No. 38, Exhibit A. As the video begins, someone yells, "I'm a child, why are you flinching?" *Id.* at 00:1–00:03. Someone else responds, "I'm not scared." *Id.* at 00:04. D. proclaims, "Let me go, I'm begging you, let me go." *Id.* at 00:05. D. then moves to strike Plaintiff, and Plaintiff responds by lunging after D., swinging his fists. *Id.* at 00:05. Plaintiff swings widely in D.'s direction and tumbles against the wall of the school. *Id.* at 00:12. Plaintiff then recovers and jumps forward again with raised fists. *Id.* at 00:14. Plaintiff and D. continue to swing at each other, and the sound of fists making contact can be heard. *Id.* at 00:16–00:22. Plaintiff then tumbles to the ground. As he rises, Coach Joe can be seen entering the frame, yelling "Hey guys, that's enough, that's enough!" *Id.* at 00:27.

*Events Following the Altercation*

Following the events captured on video, Plaintiff called Director Cook and the police on his phone and waited in Director Cook's office for the police to arrive. ECF No. 38-3 at 51–52. The police arrived after a few minutes and Plaintiff spoke with them. *Id.* The next day, Plaintiff went to an urgent care facility for a swollen muscle. *Id.* at 76:17–20. He later sought medical attention for his eye from his treating physician. *Id.* at 77:11–17.

Soon after the altercation, but at a time unclear from the record, the student-filmed video was publicly posted online. *See* ECF No. 38-13 at 11:14–19. On or about December 8, 2021, the video came to the attention of Arundel News, a local blog. ECF No. 38-12. Reporter Jim Goetz reached out about the incident to Mr. Mosier in his capacity as Board of Education Communications Officer, and

5

quoted Mr. Mosier as saying, "We are deeply concerned over the actions taken by the coach. That person was removed from his position. He will remain unpaid, while the incident is investigated." ECF Nos. 38-12, 38-13 at 11–12. In the days following the incident, Plaintiff received a letter from Dr. Frederick Rivers, Meade school principal, terminating his employment. ECF No. 38-3 at 58:5–9.

The police also issued a warrant for Plaintiff's arrest on December 8, 2021, and Plaintiff turned himself in on December 10, 2021. ECF No. 1. All charges were ultimately dismissed, and the case was expunged from Plaintiff's record. *Id.* A Department of Social Services investigation into the incident was conducted; charges of neglect were found to be sustained. ECF No. 38-3 at 54:6–20.

## PROCEDURAL BACKGROUND

Plaintiff filed two worker's compensation claims related to the incident. ECF No. 38-15. However, Plaintiff failed to appear at his August 18, 2023 hearing, and both claims were dismissed. *Id.* Plaintiff also filed a Charge of Discrimination with the Equal Employment Opportunity Commission. ECF No. 38-5. A Right to Sue letter was issued on September 1, 2022. ECF No. 38-16. On November 28, 2022, Plaintiff filed suit in this Court, claiming discrimination in violation of race, color, and age (Counts I–III); hostile work environment (Count IV); negligence (Count V); negligent supervision and failure to warn (Count VI); intentional infliction of emotional distress (Count VII); and defamation (Count VIII). ECF No. 1. On December 28, 2023, Defendants filed a Motion for Summary Judgment. ECF No. 38. The Court granted Defendants' accompanying Motion for Leave to File Physical evidence. ECF No. 50. After moving the Court for an extension of time (ECF No. 42), Plaintiff filed a Response in Opposition on February 2, 2024 (ECF No. 49), and Defendants replied. (ECF No. 53).

6

## DISCUSSION

**Standard of Review**

Pursuant to Rule 56, a movant is entitled to summary judgment where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(a). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) ("[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." (emphasis in original). An issue of fact is material if, under the substantive law of the case, resolution of the factual dispute could affect the outcome. *Anderson*, 477 U.S. at 248. There is a genuine issue of material fact "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). On the other hand, if after the Court has drawn all reasonable inferences in favor of the nonmoving party and "the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

The party seeking summary judgment bears the initial burden of establishing either that no genuine issue of material fact exists or that a material fact essential to the non-movant's claim is absent. *Celotex Corp.*, 477 U.S. at 322–24. Once the movant has met its burden, the onus is on the non-movant to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To meet this burden, the non-movant "may not rest upon the mere allegations or denials of [its] pleadings," but must instead "set forth specific

7

facts showing that there is a genuine issue for trial." *Bouchat v. Balt. Ravens Football Club,* Inc., 346 F.3d 514, 522 (4th Cir. 2003) (quoting Fed.R.Civ.P. 56(e)).

**Race and Color Discrimination in Violation of Title VII (Counts I and II) and Age Discrimination in Violation of the ADEA (Count III)**

Plaintiff argues that Defendants engaged in intentional discrimination based on race, age, and color due to the nature of his employment and the fact that he was terminated and replaced by a younger Caucasian female. ECF No. 1. Defendants contend that summary judgment is warranted for all three counts because Plaintiff is unable to establish a prima facie case of discrimination.

Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, makes it unlawful "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color ...." 42 U.S.C. § 2000e-2(a)(1). Under the ADEA, employers may not discriminate against individuals because of their age. 29 U.S.C. § 623(a)(1). Both statutes require a plaintiff to establish a claim through one of two methods. *See Causey v. Balog*, 162 F.3d 795, 800 (D.Md. 1998). The plaintiff may either demonstrate through direct or circumstantial evidence that race or age "motivated the employer's adverse employment decision," *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004), or the plaintiff may proceed through the approach adopted in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), "under which the employee, after establishing a prima facie case of discrimination, demonstrates that the employer's proffered permissible reason for taking an adverse employment action is actually pretext for discrimination." *Hill*, 354 F.3d at 285.

If the plaintiff establishes a prima facie case, the second step places the burden on the employer to assert a legitimate, non-discriminatory reason for the disparate treatment. *McDonnell Douglas*, 411 U.S. at 802. If the employer meets this step, the burden then shifts back to the plaintiff to demonstrate by a preponderance of the evidence that the employer's purported reason was "pretextual." *Venugopal v. Shire Labs.*, 334 F. Supp. 2d 835, 841 (D. Md. 2004), aff'd sub nom, 134 F. Appx. 627 (4th Cir.

8

2005). As this Court stated in *Venugopal*, "[w]hile the *McDonnell Douglas* framework involves a shifting back and forth of the evidentiary burden, Plaintiff, at all times, retains the ultimate burden of persuading the trier of fact that the employer discriminated in violation" of the statute. *Venugopal*, 334 F. Supp. 2d at 841.

Plaintiff does not allege direct evidence of race, color, or age discrimination by Defendants and must therefore proceed according to the *McDonnell Douglas* burden-shifting framework. To establish a prima facie case of race, color, or age discrimination, a plaintiff must show: (1) membership in a protected class; (2) satisfactory job performance; (3) an adverse employment action; and (4) disparate treatment as compared to similarly situated employees outside the protected class. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). While Defendants agree that Plaintiff is in a protected class based on race, color, and age, and Plaintiff undoubtably suffered an adverse employment action when he was terminated, Plaintiff has not sufficiently offered evidence to establish the remaining two elements of the prima facie case.

*Satisfactory Job Performance*

To establish the satisfactory job performance element, "a plaintiff need not 'show that he was a perfect or model employee. Rather, a plaintiff must only show that he was qualified for the job and that he was meeting his employer's legitimate expectations.'" *Gaines*, 2023 WL 2185779, at *11 (quoting *Haynes v. Waste Connections, Inc.*, 922 F.3d 219, 225 (4th Cir. 2019). When considering whether an employee is meeting the employer's legitimate performance expectations, "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000) (internal quotations omitted) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998).

As a coach for Anne Arundel County Public Schools, Plaintiff received the 2021–2022 academic year Athletic Handbook. The handbook details expectations for coaches, including that

9

they "[a]lways set a good example for participants and fans to follow, exemplifying the highest moral and ethical behavior." ECF No. 38-6 at 8. Further, coaches must "[r]efrain from verbal and physical abuse towards players, coaches, officials, and spectators." *Id.* at 48. Plaintiff has offered zero evidence to demonstrate that he was meeting this, or any other, definition of a satisfactory job performance. He merely provides the Court with unsupported, self-serving statements. Without citation, Plaintiff argues that "[a]t no time did [he] verbally or physically abuse a student. At no point did [his] performance fall below expectations or did he call the student names[.]" ECF No. 49 at 9 (internal quotations omitted). These conclusory assertions are insufficient to create a genuine dispute of material fact as to whether or not Plaintiff was meeting his employer's legitimate expectations at the time he was terminated. *See Angelini v. Baltimore Police Department*, 464 F.Supp.3d 756, 776 (D.Md. 2020) ("[A] party's 'self-serving opinion. . .cannot, absent objective corroboration, defeat summary judgment.'").

Further, significant evidence exists that Plaintiff's performance did in fact fall below his employer's legitimate expectations. The video footage clearly shows, once a physical altercation broke out between Plaintiff and D., that Plaintiff actively engaged in a fistfight with a minor student and did not take reasonable steps to deescalate the situation. *See* ECF No. 36, Exhibits A & C. Plaintiff's actions far exceeded the bounds of reasonable self-defense. Notably, it was *Plaintiff* who had to be physically restrained by Coach Joe in order to bring the fight to a close. *See id.*

*Disparate Treatment Compared to Similarly Situated Employees*

"Where a plaintiff attempts to rely on comparator evidence to establish circumstances giving rise to an inference of unlawful discrimination . . . '[t]he similarities between comparators . . . must be clearly established to be meaningful.'" *Swaso v. Onslow Cnty. Bd. of Educ.*, 698 Fed.App'x 745, 748 (4th Cir. 2017) (quoting *Lightner v. City of Wilmington, N.C.*, 545 F.3d 260,

10

265 (4th Cir. 2008)). "In the employee discipline context, a prima facia case of discrimination is established if the plaintiff shows that [she] 'engaged in prohibited conduct similar to that of a person of another race [or sex] . . . and . . . that disciplinary measures enforced against the plaintiff were more severe than those enforced against the other person.'" *Kelley v. U.S. Parcel Serv., Inc.*, 528 Fed.App'x 285, 286 (4th Cir. 2013) (quoting *Moore v. City of Charlotte*, 754 F.2d 1100, 1105-06 (4th Cir. 1985)).

Here, Plaintiff does not provide any specific examples of comparators who received better treatment based on their race or color. *See* ECF No. 49. He only argues that he "was treated unfairly, not afforded a proper investigation, and not afforded his rights to appeal the termination while other younger Caucasian employees [were] not terminated and defamed after similar occurrences." *Id.* at 9. Without additional details, including the nature of the misconduct that the Caucasian employees allegedly engaged in, the Court is unable to find that the similarities between Plaintiff and the comparators are meaningful. *See Swaso*, 698 Fed.App'x at 748. As I construe Plaintiff's brief, Plaintiff also attempts to offer D. as a comparator, arguing that Defendants "again show their preferential treatment towards younger individuals when deciding to ignore their policies and procedures regarding disciplining the student. Per Defendant's own policy, the young man who physically attacked Plaintiff should have been suspended for 45-days, instead, he was only suspended for 3-days." ECF No. 49 at 10. D., a minor student who was not employed at Meade, is a wholly inappropriate comparator.

Because Plaintiff has failed to show that he was satisfactorily performing his job and that other employees outside of his protected classes were treated more favorably, he has failed to make out prima facie cases of discrimination based on race, color, or age.

*Defendants' Purported Reason for Terminating Plaintiff was not Pretextual*

Even if Plaintiff could establish a prima facie case, he has failed to rebut Defendant's

legitimate, non-discriminatory reason for terminating his employment: namely, his unsatisfactory

performance. As explained above, Plaintiff's performance deficiencies were documented in the

closed-circuit school video and the student cell phone video. Plaintiff has failed to rebut this

evidence by showing that he *was in fact* satisfactorily performing the functions of his job or that

other similarly situated employees were more leniently disciplined for similar violations.

Accordingly, Plaintiff has failed to show that Defendants proffered non-discriminatory reason is

"false" or "unworthy of credence" and therefore, pretextual. *See Price v. Thompson*, 380 F.3d 209,

212 (4th Cir. 2004) (Pretext can be proven "by showing that the explanation is unworthy of

credence or by offering other forms of circumstantial evidence sufficiently probative of" race/sex

discrimination (citation omitted)); *see also King*, 328 F.3d at 152 (explaining that the plaintiff's

comparator pretext argument fails because he did not "present the first form or proof . . . testimony

that the administrators believed the two teachers were similarly situated in the relevant respect").

For these reasons, Defendants' Motion for Summary Judgment is GRANTED as to

Counts I, II, and III of the Complaint.

**Hostile Work Environment in Violation of Title VII (Count IV)**

Plaintiff next argues that on account of "his race, color, and age, as well as employee status

as a coach, [he] was subjected to unwelcome hostile and dangerous workplace environment,

including but not limited to being forced to work amongst unsupervised students without security,

hall monitors, or any action plan instated to protect him in such an event of being verbally and/or

physically assaulted." ECF No. 1 at ¶ 96. Defendants assert that summary judgment on Count IV

is appropriate because Plaintiff's allegations of workplace harassment fail all four elements of a hostile work environment.[4] ECF No. 38-1.

Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin[.]" 42 U.S.C. § 2000e-2(a)(1). "Since an employee's work environment is a term or condition of employment, Title VII creates a hostile working environment cause of action." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 313 (4th Cir. 2008) (quoting *EEOC v. R&R Ventures*, 244 F.3d 334, 338 (4th Cir. 2001)).

To state a hostile work environment claim, Plaintiff must allege that: (1) he experienced unwelcome harassment; (2) the harassment was based on his gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer. *See Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *see also Webster v. Chesterfield Cnty. Sch. Bd.*, 38 F.4th 404, 410 (4th Cir. 2022). Plaintiff has plausibly established the first element by demonstrating that he viewed the conduct at issue—having to perform his job in an allegedly dangerous working condition—as unwelcome. However, he cannot establish the remaining three elements. *See id.*

---

[4] In the Complaint, Plaintiff titles Count IV simply as "Hostile Work Environment," but does not instruct the Court as to which statute he is bringing the claim under. ECF No. 1 at 16. Defendant proceeds under the assumption that the allegation concerns a violation of Title VII. ECF 38-1 at 13. Plaintiff does not correct Defendant in his Response in Opposition to the Motion for Summary Judgment, and thus the Court will analyze Count IV as a hostile work environment in violation of Title VII claim. *See* ECF No. 49 at 12–13.

*Harassment Based on Gender, Race, or Age*

"To satisfy the second element of a hostile work environment claim, [a] plaintiff must allege that she was harassed or otherwise discriminated against 'because of' her protected class." *Prosa v. Austin*, No. ELH-20-3015, 2022 WL 394465, at *36 (D. Md. Feb. 8, 2022) (citing 42 U.S.C. § 2000e–2). Further, "[t]he plaintiff may satisfy this burden by showing that, 'but for' her protected class, she would not have suffered discrimination." *Id.*

Here, Plaintiff has not generated sufficient evidence to demonstrate that he was harassed or otherwise discriminated against because of his age or race. Plaintiff contends that, because of his age and race, he was not provided with adequate security on school premises and was instead told to defend himself against violent students. *See* ECF No. 49. Plaintiff argues that he was instructed to "act as a makeshift security person." ECF No. 49 at 13. However, Plaintiff's own deposition testimony contradicts his assertions. *See* ECF No. 49-4. According to Plaintiff, Director Cook told all athletic coaches that, while he did not anticipate that they would be harmed by a student, coaches should "[d]o whatever it is that you have to do in order to protect yourself," if a student became violent and out of control. ECF No. 49-4 at 92:13–19. This directive was given to all coaches, regardless of race and age, and not just Plaintiff. *Id.* at 93:1–12.

Plaintiff also argues that, because of his race and age, he was instructed to "help" deal with dangerous and unsupervised students. ECF No. 49 at 12. Nothing in the record supports this assertion. While Director Cook did send a communication to all sports coaches entitled "**NEED YOUR HELP:**" (emphasis in original), he was clearly imploring the coaches to help ensure that the student athletes *for whom each coach was responsible* did not wander the hallways when they ought to be in class. ECF No. 49-3. Director Cook did not instruct coaches to approach and confront students who were not under their care. *See id.* Thus, the Court has not been presented

14

with any evidence, beyond Plaintiff's own assertions, that Defendants intended to utilize Plaintiff as a substitute for actual school security officers, let alone that Plaintiff was singled out for such duties due to his race and age. Plaintiff's "self-serving, conclusory, and uncorroborated statements" are therefore "insufficient to create a genuine issue of material fact." *Williams v. GENEX Services, Inc.*, No. MJG–13–1942, 2014 WL 4388360, *1 (D.Md. Sept. 4, 2014).

*Sufficiently Severe or Pervasive to Alter the Conditions of Employment and Create an Abusive Atmosphere*

In order to satisfy the "severe or pervasive" element, a plaintiff must demonstrate that they "subjectively perceive[d] the environment to be abusive" *and* "that a reasonable person would find [the environment] hostile or abusive[.]" *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). "[T]he behavior need not be *both* severe and pervasive: the more severe the conduct, the less pervasive the plaintiff need prove that it is." *Williams v. Silver Spring Volunteer Fire Dept.*, 86 F.Supp.3d 398, 413 (D.Md. 2015) (quoting *Reed v. Airtran Airways*, 531 F.Supp.2d 660, 669 (D.Md 2008)). The Supreme Court of the United States has explained that "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonable interferes with an employee's work performance" are relevant considerations in the "severe or pervasive" inquiry. *Id.* at 23. Here, Plaintiff has presented the Court with no evidence supporting his argument, and has only put forth that "[t]he conditions that Defendant allowed and created in their building, the work environment, were 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" ECF No. 49 at 12. Merely parroting the third element of the prima facie case is insufficient to create a triable issue of fact. *See Williams*, 2014 WL 4388360, at *1.

*Basis for Imposing Liability on the Employer*

Further, the record does not show that there is a basis for imposing liability on the Defendants. "An employer may be held liable for a hostile work environment 'if it knew or should have known about the harassment and failed to take effective action to stop it by responding with remedial action reasonably calculated to end the harassment.'" *Webster v. Chesterfield Cnty. Sch. Bd.*, 38 F.4th 404, 410 (4th Cir. 2022) (quoting *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 498 (4th Cir. 2015)). Assuming *arguendo* that Plaintiff was targeted because of his race and age and required him to work as a makeshift security person, Plaintiff has not provided the Court with any evidence that Defendants knew or should have known that he was subject to such conditions.

Defendants' Motion for Summary Judgment is GRANTED as to Count IV of the Complaint.

## Negligence and Negligent Supervision and Failure to Warn (Counts V and VI)

Plaintiff additionally asserts claims of negligence and negligent supervision and failure to warn based on the "dangerous threat posed by unsupervised students, specifically towards staff and teachers." ECF No. 1 at 19, 21. Defendants argue that summary judgment is appropriate, and that the Court need not reach the merits of Counts V and VI, because the Maryland Workers' Compensation Act ("WCA") preempts all such tort actions against an employer.

"An employee's right to sue her employer for negligence in failing to use reasonable care to provide a safe workplace was abolished in 1914 when Maryland passed its first workers' compensation law." *McCullough v. Liberty Heights Health & Rehabilitation Ctr.*, 830 F.Supp.2d 94, 99 (D.Md. 2011). Presently, § 9-509 of the Labor and Employment Article of the Maryland Code provides that "[e]xcept as otherwise provided in this title, the compensation provided under this title to a covered employee or the dependents of a covered employee is in place of any right

16

of action against any person." Md. Code Lab. & Empl. § 9-509(b). The exceptions to the exclusivity of the remedy are: (1) "[i]f an employer fails to secure compensation in accordance with this title" or (2) "if a covered employee is injured or killed as the result of the deliberate intent of the employer to injure or kill the covered employee." § 9-509(c)–(d). As for the latter exception, "[p]roof of an employer's willful, wanton, or reckless conduct, even when that conduct is undertaken with a knowledge and appreciation of a high risk to another, does not suffice to bring employer's conduct within intentional tort exception to [WCA]'s normal exclusivity rule." *McCullough*, 830 F.Supp.2d at 99 (citing *Gantt v. Security, USA*, 356 F.3d 547, 555 (4th Cir. 2004)).

Here, Plaintiff has not provided any evidence demonstrating that his claims fall into either of the § 9-509 exceptions. Plaintiff filed two workers compensation claims related to the December 7, 2021 incident, but the cases were dismissed when Plaintiff failed to attend his hearing. ECF No. 38-15. Plaintiff has also not alleged any intentional conduct on the Defendants' part in order to bring his claims within the intentional tort exception. *See* ECF No. 1. Defendants' Motion for Summary Judgment is GRANTED as to Counts V and VI of the Complaint.

**Intentional Infliction of Emotional Distress (Count VII)**

Plaintiff also argues that "Defendants participated in an intentional and discriminatory course of action that a reasonable person would find extreme and outrageous because it falls well outside the bounds of decency." ECF No. 49 at 14. Defendants counter that Plaintiff cannot establish any of the elements of the tort of intentional infliction of emotional distress (IIED). ECF 38-1.

"Generally speaking, claims for IIED are disfavored, difficult to establish and, as such, 'rarely viable.'" *Brown v. Harford Bank*, No. ELH-21-0096, 2022 WL 657564, at *16 (D.Md.

17

Mar. 4, 2022). Maryland courts have held that a plaintiff must establish that: (1) the conduct at issue must be intentional or reckless; (2) the conduct must be extreme and outrageous; (3) there must be a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress must be severe. *See Caldor, Inc. v. Bowen,* 330 Md. 632, 641–42 (1993) (citing *Harris v. Jones,* 281 Md. 560, 566 (1977). Assuming *arguendo* that Defendants' conduct was in fact wrongful, Plaintiff has demonstrated that his distress was causally related to Defendants' actions. However, Plaintiff has not sufficiently demonstrated that Defendants' conduct was intentional and reckless, that it was extreme and outrageous, or that Plaintiffs' own emotional distress was severe.

A defendant's conduct is intentional or reckless where (1) "he desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct"; or (2) "where the defendant acts recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow." *Harris,* 281 Md. at 567. As I construe Plaintiff's brief, he contends that Defendants acted with reckless disregard for Plaintiffs' emotional well-being and safety by allowing him to work surrounded by "disrespectful" and "unsupervised" students. However, Plaintiff provides no evidence, beyond his own assertions, that Defendants acted in a "deliberate disregard of a high degree of probability" that Plaintiff would experience emotional distress. See ECF No. 49 at 14.

Plaintiff similarly fails to establish that Defendants' conduct was extreme and outrageous, or that Plaintiff's own emotional distress was severe. "In order to satisfy the element of extreme and outrageous conduct, the conduct 'must be so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.'" *Mitchell v. Baltimore Sun Co.,* 164 Md.App. 497, 525 (2005) (quoting *Batson v. Shiflett,* 325 Md.

18

684, 733 (1992)). The emotional distress "must be so severe that 'no reasonable man could be expected to endure it.'" *Id.* (quoting *Harris v. Jones*, 281 Md. 560, 571 (1977)). "One must be unable to function; one must be unable to tend to necessary matters." *Id.* (quoting *Hamilton v. Ford Motor Credit Co.*, 66 Md.App. 46, 60–61 (1986). Here, Plaintiff has not demonstrated that his suffering was so severe that he could not "be expected to endure it." To the contrary, in both the immediate and future aftermath of the incident, Plaintiff appears to have demonstrated relatively normal functional capacity. Following the physical altercation with D., Plaintiff can be seen calmly pacing outside of Meade and making a phone call. *See* ECF No. 38, Exhibit C. The incident also did not deter Plaintiff from continuing his coaching career—he testified that, even when he was dismissed from Meade, he had hoped to continue performing under another existing coaching contract in Baltimore City. ECF No. 38-3. Defendants' Motion for Summary Judgment is GRANTED as to Count VII of the Complaint.

**Defamation (Count VIII)**

Defendants assert that they are entitled to summary judgment on Count VIII because Plaintiff has generated insufficient evidence demonstrating that Defendants' statement to Arundel News was defamatory. *See* ECF No. 38-1. Plaintiff responds that Defendants did defame him, as they caused the public to believe that he had physically attacked a student, when they were aware that he had not. ECF No. 49.

Under Maryland state law, the tort of defamation encompasses both libel and slander, and the essential elements are the same. *Publish Am., LLP v. Stern*, 216 Md. App. 82, 99 n. 16 (2014). To bring a claim of defamation, a plaintiff must establish: (1) that the defendant made a defamatory communication, i.e., that he communicated a statement tending to expose the plaintiff to public scorn, hatred, contempt or ridicule to a third person who reasonably recognized the statement as

19

being defamatory; (2) that the statement was false; (3) that the defendant was at fault in communicating the statement: and (4) that the plaintiff suffered harm." *Davenport v. Sallie Mae, Inc.*, 124 F.Supp.3d 574, 584 (D.Md. 2015) (citing *Peroutka v. Streng*, 116 Md.App. 301, 311 (1997)).

Defendants' communication regarding the incident could reasonably be interpreted as defamatory, as it rebuked Plaintiff by expressing "deep concern" over his actions. ECF No. 38-12. Defendants could also reasonably be found to be at fault—they intentionally communicated the statement to Arundel News. However, Plaintiff has offered no evidence demonstrating that the statement was false. By all accounts, Anne Arundel County Public School officials *were* concerned about the physical altercation, and Plaintiff *was* suspended while an investigation took place. Finally, Plaintiff has offered no evidence, beyond his own testimony, that he was harmed by the statement. *See* ECF No. 49. Plaintiff merely argues that Defendants "wanted to paint Plaintiff as the villain, which [they] did successfully do, and it caused severe damage to Plaintiff's emotional health and well-being, ruined his career opportunities, and destroyed his reputation in the community." ECF No. 49 at 15. This is insufficient to survive summary judgment.

Defendants' Motion for Summary Judgment is GRANTED as to Count VIII of the Complaint.

## CONCLUSION

The bottom line here is that Plaintiff exercised extremely poor judgment and violated school policy when he decided to engage the student in a physical altercation. Plaintiff could have simply walked away or called for help. Not only is there scant evidence of any basis for a claim of discrimination, there exists no evidence of discrimination at all. There is no excuse for Plaintiff's

conduct and Plaintiff can not use the protections of Title VII to shield him from his own poor judgment.

For the reasons set forth in this Memorandum Opinion, Defendants' Motion for Summary Judgment (ECF No. 38) is GRANTED as to all Counts. A separate Order will follow.

Date: 8 March 2024

A. David Copperthite
United States Magistrate Judge

21